MARIE CAMILLE WAGGAMAN *v.* JAMAS W. ZACHARIE and another, Administrators of the Succession of George A. Waggaman, deceased.

When the law incapacitates persons from making certain contracts, the form of the contract cannot prevent their being allowed to prove the real nature of the transaction by parol evidence, or other proof going to contradict the contents of the acts, and tending to show that the parties intended to evade the provisions of the law; as where a wife binds herself as principal, though the object was to bind her as surety, for the repayment of money received and used by her husband for his exclusive benefit.

The wife has a legal mortgage on the property of her husband, or of the community, to secure the reimbursement of her paraphernal funds, received by her husband.

Under the Code of 1808, the wife had a tacit mortgage on her husband's property, to indemnify her for any debts for which she might have bound herself jointly with him, from the day of the execution of the obligation. Book 3, tit. 5, art. 53, § 3; tit. 19, art. 17, § 3. The Code of 1825, art. 2412, having prohibited a wife from binding herself for her husband, or jointly with him, for debts contracted by him before or during the marriage, and having declared, (art. 3280,) that no legal mortgage shall exist except in the cases determined by it, the articles of the Code of 1808, relative to the tacit mortgage of the wife for her indemnification for debts contracted jointly with the husband, have ceased to be in force. Stats. 12 March, 1828; 25 March, 1828, s. 25. The fact of the marriage having been contracted before the promulgation of the Code of 1825, cannot entitle the wife to a mortgage to indemnify her for any liability for her husband, contracted since its promulgation.

Buildings or other improvements erected by the community on the separate pro-
perty of one of the spouses, belong to the latter on the dissolution of the commu-
nity, who will owe to the other spouse one-half of the increased value which
such improvements have added to the property. The difference between the
value of the property at the time of the dissolution of the community, in the
situation in which it was at the date of the marriage, and its real value, with all
the improvements, at the time of such dissolution, is the measure of such in-
creased value. C. C. 2377.

Appeal from the Court of Probates of Jefferson, *Smith*, J.

*R. N.*, and *A. N. Ogden*, for the plaintiff.

*T. Slidell*, for the appellants.

Simon, J. This suit was instituted for the purpose of liquida-
ting contradictorily with the administrators of the succession of
George A. Waggaman, deceased, the amount which the plaintiff,
who is the widow of the deceased, alleges to be due to her by the
estate of her late husband, and of compensating so much of the
said amount as may be found necessary, with the value of cer-
tain improvements put upon her own land and city lots by her
late husband, during the existence of the community.

The claims set up by the plaintiff consist in the following
sums, to wit: 1st. In the sum of $36,000 principal, and $7200 in-
terest, being the amount of a debt contracted by the deceased in
favor of R. D. Shepherd, for which, she states, she became sure-
ty, though in the form of a principal.

2d. In the sum of $14,310 principal, and $2868 interest, being
the amount of two debts contracted by the deceased with the
Union Bank of Louisiana for money loaned him, in which, she
alleges, she was in truth the surety of her husband, although in
each of the contracts she is represented as a principal, bound, *in
solido*, with him.

3d. In the sum of $50,000 principal, and $7500 interest, being
the amount of a debt of the deceased in favor of François Gar-
dère, which she assumed as her own, in a contract signed by
herself and husband, and for which, she alleges, she was in truth
the surety of her husband, although a different form was given
to her engagement.

4th. In the sum of $6008, of which $1708 was received by
the deceased, in May, 1833, from the testamentary executor of
her father's estate; $500 being a part of a debt due to her father

by the succession of Latiolais, inherited by her, and collected by the deceased; and the rest being the amount of the prices of slaves of hers sold by her husband, and received by him.

5th. In the sum of $15,987 20, being the amount of moneys belonging to her and in the hands of her father's executor, and by him paid over to the deceased.

All which sums amount to $139,873 26. She prays, that $29,150 thereof may be compensated with the same sum as the increased value of her property improved during the community, and that judgment for the balance may be rendered in her favor against her husband's succession, with mortgage and privilege, &c.

The defendants first pleaded the general issue, further alleging that the deceased during his lifetime, caused to be erected, with funds of the community, extensive and valuable improvements on the plaintiff's paraphernal property, all amounting to the sum of $70,000, money expended on said buildings and improvements; that all the buildings belong to the community, and should be applied to the community debts; and they'further aver, that if the improvements belong to the plaintiff, as by her pretended, the succession should be entitled to a credit of $70,000, to be charged against the plaintiff on account of whatever credit she may be entitled to. They pray, that the buildings and improvements may be decreed to belong to the community; that they be appraised by separate appraisements of the land and improvements; and that the proceeds thereof be divided between the plaintiff and the succession in the ratio of said improvements. But in case the opinion of the court should be adverse to the claim of ownership by the succession, they pray, that a credit of $70,000 may be given in account to the said succession, and that a judgment for the balance may be rendered against the plaintiff, &c.

There was judgment below in favor of the plaintiff allowing compensation to the amount of $29,150, the value of the buildings and improvements, and liquidating the balance due her by the succession of her husband, at $110,343 20, with mortgage on all the immoveable property of the estate; and from this judgment the defendants have appealed.

From the issues presented by the pleadings, it is contended by the appellants: 1st. That the plaintiff has not satisfactorily proven

the several amounts, which she pretends to be entitled to claim against the succession of her late husband.

2d. That she has not established her right of mortgage and privilege on the property of the deceased, or of the community.

3d. That the buildings and improvements belong to the community, and should be administered and sold by the defendants as administrators.

4th. That if the buildings do not belong to the community, but may be kept by the owner of the soil as her own, they must be paid for at their original cost.

I. Without its being necessary to review the whole evidence contained in the record, we think it proper to notice here the most important facts which the case presents. It appears that the parties were married, in 1818. In 1832, Mrs. Waggaman's father died, leaving her his sole heir. His estate was considerable, and consisted in a large mass of property which came immediately under the administration and control of the plaintiff's husband. In 1833, the testamentary executor of her father having rendered an account of his administration to the deceased husband of the plaintiff, it is shown that he (G. A. Waggaman) received a sum of money amounting to $1708 10. He also received subsequently divers other sums of money, proceeding as well from the estate of plaintiff's father, as from the sales of several slaves belonging to the plaintiff, or by her inherited from her father, the whole amounting to $21,645 30, which came to the hands of the deceased, and were by him received in the right of his wife, as her paraphernal funds.

It is also shown, that the plaintiff's father left an unencumbered estate; that the plaintiff had no debts of her own, never took any active part in the administration of her property, and that her husband, who had the entire control of it, had the absolute enjoyment of the revenues. He had large debts of his own, which had been partly created by buildings erected by him on the paraphernal property of his wife, although, as one of the witnesses says, "the revenues would have been sufficient to have paid all the debts and leave a surplus in money." It further appears, that in the year 1841, the deceased, who was greatly embarrassed, induced his wife, the plaintiff, to sign three several contracts of

mortgage, and a certain number of notes jointly and severally with him. The mortgage debts were contracted in favor of R. D. Shepherd, of the Union Bank of Louisiana, and of François Gardère, for the amounts mentioned in the plaintiff's petition; and although contracted for by the plaintiff in her own individual name, were, as shown by the evidence, really debts due by the husband, for which she was in truth, though not in form, his surety. This is established by all the circumstances disclosed in the evidence, and by the acts themselves, which show that the debts were created for money borrowed from the mortgage creditors. This money was used entirely to pay the husband's debts, was received by him, and nothing proves that the plaintiff ever was put in possession of any part of the sums borrowed, or that any portion thereof ever was employed for her benefit. On the contrary, we are satisfied from the evidence, that the transactions were exclusively for the benefit of the husband or of the community, that the plaintiff had no direct interest in them, and that her name was used in the acts, only with a view of binding her as her husband's surety, in the form of contracts in which she appeared as principal. This cannot be permitted; and we have often said, that when the law incapacitates persons from making contracts of a particular kind, the form of the contract cannot prevent their being allowed to prove the real nature of the transaction by parol evidence, or other proof going to contradict the contents of the acts, and tending to show that the parties intended to evade the provisions of the law. 5 Mart. N. S. 54. 7 Ibid. 341. 8 Ibid. 692; and the case of *Macarty* v. *Roach and another,* 7 Robinson, 357. We are, therefore, of opinion, that the rights of the plaintiff were correctly liquidated by the judge, *a quo,* at the amount for which judgment was rendered in her favor.

II. According to the jurisprudence of this court, as established in the case of *Johnson* v. *Pilster,* (4 Robinson, 71,) and in the case of *Compton* v. *Her Husband,* lately decided at Alexandria, (6 Robinson, 154,) the plaintiff is clearly entitled to her tacit and legal mortgage on the property of her husband or of the community, to secure the reimbursement of the sums which he may have received in her right as her paraphernal funds. The plaintiff appears to have renounced the community in due form, after

having caused inventories to be made in due time; and it is clear that, as to the sum of $21,645 30, she is entitled to exercise her right of mortgage. But is it the same as to the sums which she has assumed to pay to three mortgage creditors, by the three different contracts above referred to? It is true, the parties were married in 1818, and that by the provisions of the Code of 1808, p. 332, art. 53, § 3, and p. 454, art. 17, § 3, *"the wife has a tacit mortgage on her husband's property, to indemnify her against the debts for which she has made herself liable jointly with her husband, from the day when the obligation was executed."* But since the Code of 1824, and particularly since the law of 1828, (Bullard & Curry's Digest, pages 151 and 155,) the articles of the old Code relative to the tacit mortgage of the wife for the indemnification of the debt contracted by her jointly with her husband, have ceased to be in force, under article 3280 of the Civil Code, which declares, that *" no legal mortgage shall exist except in the cases therein determined."* Here, the obligations were contracted in 1841, when no mortgage was allowed by law to indemnify her against such obligations. She had acquired no right under the old law, which, though prospective in its operation upon the matrimonial rights of the spouses from the time of their marriage, cannot continue to govern their contracts, or at least the effect of their contracts, made after the promulgation of a law operating a change in the rights resulting therefrom, particularly when third persons, such as, in this case, the other creditors of the husband, are to be affected thereby. The new law may, without having a retroactive effect, regulate the effect of obligations contracted posterior to its promulgation, and change at all times the consequences of eventual rights which did not exist, or were not acquired under the old law. So, we find in 14 Sirey, part 2, p. 33, a case in which it was held, that a woman, married under a law which allowed her a legal mortgage as well for her *dot* as for the increase of her *dot*, cannot claim the benefit of such mortgage for such increase, if it took place after the promulgation of the Napoléon Code, which prohibits any increase of dowry during the marriage. So, in 15 Sirey, part 2, p. 73, it was decided, that the question, whether the mortgage of the wife on the property of her husband, on account

of the debt which he induced her to contract for his benefit, and to indemnify her against such debt, takes place from the day of the marriage, or from the day the obligations were contracted, ought to be decided by the law in force at the time such obligations were contracted, and not according to the law existing at the time of the marriage. This doctrine is certainly correct, and we think it ought to be adopted, particularly when we may fairly consider that the reason which induced our legislature not to allow to the wife, by the new Code, any legal mortgage for the indemnification of the debts which she may make herself liable to pay for her husband, and to abrogate the provision contained in the old Code, is obviously, that such obligations on the part of the wife are absolutely prohibited by the article 2412 of the new Code, as repeatedly established by the jurisprudence of this court, and that she is not bound to comply with such obligations.

The case of *Dixon* v. *Dixon's Executors*, 4 La. 190, relied on by the plaintiff's counsel, is very different. In that case, the rights of the spouses to the property of the community were acquired under the law in force at the time of the marriage—under a law which had begun to operate upon those rights from the moment the marriage was contracted, although the property may have been acquired subsequently; and it is clear, that those rights, which had their origin under a particular law in relation to which the parties contracted, cannot be affected by the subsequent enactment of a law abrogating or modifying the former provisions. Here again, no rights had been acquired; they were merely prospective and eventual, and they must be governed by the law in force at the time the obligations from which they are derived were executed. We conclude, therefore, that the plaintiff has no legal mortgage on the property belonging to the succession of her husband, to indemnify her against the debts which she assumed to pay under the three contracts above referred to.

III. IV. It cannot be controverted that, under the spirit of art. 2377 of the Civil Code, buildings and other improvements erected by the spouses during the marriage on the hereditary property of either, belong necessarily, *at the dissolution of the community*, to the owner of the soil, in this sense—that he may keep them, and that he owes to the other spouse a recompense of one-half of the

value of the increase or ameliorations, to be ascertained by an es-
timation of the value which such improvements may have added
to the property. This is in accordance with art. 1437 of the
Napoléon Code, under which the doctrine has been established by
several distinguished French jurists, that buildings and improve
ments in general, erected by the community on the separate pro-
perty of one of the spouses, belong to that party, *when the com-
munity is dissolved.* Pothier, Communauté, No. 634, says :
" *Ces impenses donnent lieu à une récompense, qui est due à la
communauté par le conjoint propriétaire de l'héritage, sur lequel
elles ont été faites.*" See also Nos. 624, 625, and 626 ; Paillet,
on art. 1437 ; Toullier, vol. 12, Nos. 543, 544, *et suiv ;* and Mer-
lin, *verbo,* Récompense, sect. 1, § 2, Nos. 15 and 16. This doc-
trine has also been fully recognized by us in the case of *Robin*
v. *Nolan,* (4 Robinson, 278 ; 6 Ibid. 508,) in which we estab-
lished the rule under which the estimation of the value of the in-
crease or ameliorations should be made, under a correct applica-
cation or construction of art. 2377. We were of opinion, in that
case, that the recompense was not due to the amount of the original
cost ; and we said that, by following the rule pointed out by us,
" it would be easy to ascertain how far the increase in value of
the property could be attributed to the ordinary course of things,
to the rise in value of property,·or to the chances of trade, since
its estimation according to its value at the time of the dissolution
of the community, in the situation in which it was at the time of
the marriage, would necessarily include its increased value due
to any thing else but to the common labor, expense or industry
of the spouses, during the existence of the marriage." On re-
ferring to the record in the present case, we find that the value
ascertained by the appraisements was fair and correct, and that
the plaintiff has been benefitted by the increase or ameliorations
of her property to the amount of $29,150, which in consequence
of her renunciation of the community, she owes to the succession
of her husband, represented by the defendants.

Under this view of the questions presented by the pleadings,
we come to the conclusion that, although the plaintiff has estab-
lished the amount of her claims against her husband's estate in
the sum of $139,493 20, she is not entitled to her legal mort-

gage on the property of the succession, for more than $21,645 30 ; that the balance, to wit, $117,847 90, ought to be considered as an ordinary debt, to be paid in the course of administration ; that she cannot be allowed to compensate the amount by her due for the increase of her property, with that of her rights, for more than the said sum of $21,645 30, secured by legal mortgage ; and that she owes to the estate of her husband, the balance of $7504 70, which she must pay over to the defendants, in order that the same may be applied, in the course of their administration, to the payment of the privileged, mortgage and ordinary debts of the succession, according to their rank, and among others to the satisfaction of the mortgage debts, which the plaintiff has assumed to pay for her husband to the creditors named in her petition.

It is, therefore, ordered, that the judgment of the Court of Probates be annulled ; that the plaintiff recover of the succession of George A. Waggaman, deceased, the sum of $139,493 20 ; that out of this sum, she be allowed to compensate that of $21,645 30, secured by legal mortgage, with so much of the amount by her due to the estate, to wit, $29,150, for the value of the increase of her property ; that she pay the balance, to wit, $7504 70, to the defendants, to be applied by them, in the course of administration, to the satisfaction of the debts of the succession, as expressed in the foregoing opinion ; and that said plaintiff be classed in the tableau of distribution of the estate, as an ordinary creditor thereof, for the sum of $117,847 90 ; reserving to her, however, the right of claiming from the administrators (in deduction of the said sum,) whatever portion of the funds of the estate which may be placed on the said tableau as applicable to the satisfaction of the mortgage debts for which she has made herself responsible, and this, by virtue of the legal subrogation to which she may show herself entitled.   It is further ordered and decreed, that the costs in the lower court be paid by the succession, those in this court to be borne by the plaintiff and appellee.