## KELLY & FRAZIER et al. *v.* TENNESSEE ROBERTSON et al.

Where husband and wife are sued at the actual domicil of the wife, and the husband submits to the jurisdiction, the wife cannot except, that she was not sued at the matrimonial domicil.

The wife is not separately liable during the existence of the community, for debts created by the husband's drafts, though the moneys raised thereon were to pay the debts of the wife before the marriage.

The wife who is indebted to the community cannot be garnisheed during the community for its debts.

The wife is not responsible for the debts of the community while it exists.

No action can be maintained to liquidate the affairs of the community, and establish the wife's indebtedness thereunto, until it is dissolved. The community can only be dissolved by action for divorce or separation from bed and board.

APPEAL from the Sixth District Court of East Baton Rouge, *Robertson*, J. *G. S. Lacey*, for plaintiffs and appellants:

*Kelly, Conyngham & Co.*, now represented by the plaintiffs in this suit, having obtained a judgment, on account of a community debt, against the defendant, *Charles H. Davis*, for $8,434 43, and interest, brought the present action against both the husband and the wife. The grounds for such action, as set forth in the petition, are four-fold :

1. A separate benefit and advantage, derived by the wife, to the full extent of the claim, which formed the basis of the judgment;

KELLY
*v*
ROBERTSON.

2. The unconditional acceptance of the community by the said wife, which, forever thereafter, barred her from the right to renounce;

3. Her indebtedness to the community, in a sum not less than $15,000, and her consequent liability to be garnisheed;

4. For an account of the community transactions, with a view of its liquidation, *pro hac*, and to force the wife to bring the amount of her indebtedness into court, to be paid over to the community creditors, according to their rank and privileges.

I. The intention of the husband to make either the parish of East Baton Rouge or Iberville his domicil, "*must depend upon circumstances;*" and the facts or circumstances disclosed upon the trial of the exception clearly settle, as a matter of intention, that the domicil of Gen. *Davis was in the parish of East Baton Rouge.*

II. If, however, it can, by any possibility, be considered that the evidence does not go to the extent maintained by the undersigned, then we contend that, at least, it has the effect of showing that Gen. *Davis* had his domicil *as much in the parish of East Baton Rouge* as Iberville; and under such circumstances it is at the option of the persons, whose interests are thereby affected, to consider *either* parish as his legal domicil.

III. This action is not confined to a separate or personal demand against the defendant, *Tennessee Robertson*, but is brought against her as *garnishee; and* also, to compel her, contradictorily with the creditors and her husband, *to liquidate the community of acquets and gains.* Over these the court *a quo* clearly had jurisdiction.

IV. *The defendant, Tennessee Davis, is liable to the plaintiffs in an action of garnishment.*

The true construction of the act of 1839, (sec. 13, p. 166,) which was made by the act of 1840, (sec. 1, p. 43,) to extend throughout the State is, that *all* persons whomsoever, *other than judgment debtors,* who have any rights, credits or property in their hands belonging to such judgment debtors, are liable to be garnisheed; and the very object for which the statute was passed, viz: to reach those who could not be reached by the ordinary writ of *fieri facias,* is very conclusive proof that any other construction would be injudicious, unsafe and unsound. The act of 1839, when properly construed, possesses *three* requisites: 1st. That there should be a judgment debtor; 2d. That there should also be another person, who is not the defendant in the judgment; and, 3d. That such other person should have property, &c., in his hands, belonging to the judgment debtor. Was there not, in our case, a judgment debtor? There was, viz: *Charles H. Davis!* Was there not another person, who was not a defendant in the judgment? Most clearly there was! Mrs. *Davis,* a person separate and distinct from her husband, and who was, in no way, shape or manner, a party to the judgment sought to be executed! Did not that other person, Mrs. *Davis,* have property, rights, &c., in her hands, belonging to the judgment debtor? This question, like the two preceding it, being answered in the affirmative, shows that *all* the *essentials* for a proceeding in garnishment, under a true construction of the act of 1839, have existed; and such being the case, why should not that statute be made to apply to a wife as well as to any other person?

The Counsel for Mrs. *Davis* are disposed, however, to view the garnishment act *technically,* and for that reason you find an averment in their answer, that the wife is not, " *technically,*" a third person, where the husband is a judgment debtor. Your Honors will scarcely resort to a technical construction of a statute, for the purpose of avoiding its plain and obvious intent; but if technicalities are to have any weight, we can give you *one* worth *two* of theirs: a technicality, if you will, which favors, not impedes justice. We insist that the judgment against Gen. *Davis* is against the community of acquets and gains; that Mrs. Gen. *Davis* is at least a third person to such community, and that, consequently, she is a third person to the real judgment debtor. That the judgment vs. *Davis,* is one *against the community,* is evident, from the nature of the debt upon which it is founded, and the time and circumstances under which it was rendered. Is the defendant, *Tennessee Robertson,* a third person to the community between herself and her husband? Your Honors have answered this interrogatory, in *Childers* v. *Johnson,* 6 Ann. p. 641. " This community, creditors have the right to consider as a legal entity: it must be contemplated as an ideal being, *être* moral, distinct from the persons who com-

pose it, having its rights and obligations, its assets and its liabilities, its debtors and its creditors." The Counsel for the plaintiffs can well understand that the defendants, though twain, have been made, at the matrimonial altar, one; but he knows of no vo.v, either registered on earth, or recorded in heaven, which has united Mrs. *D.wis* to that *être* moral—that ideality—that legal entity, spoken of by your Honors, in the case of *Childers* v. *Johnson*, above referred to. If it be true, then, that the community is the judgment debtor, and it be furthermore true, that Mrs. *D.wis* is as separate and distinct from that community, as your Honors from myself, then it necessarily follows, as a corollary, that the defendant is a third person to the *real* judgment debtor, and is, even under a technical construction of the act of 1839, liable to the proceedings in garnishment.

V. Mrs. *D.wis* being a debtor to the community, has no legal right to retain that indebtedness from the community creditors, but must liquidate the community, with the view of enabling the Judge to force her to bring such indebtedness into Court, to be distributed among the creditors according to their rank and privileges.

The indebtedness of Mrs. *Davis* to the community, and the inability of the community creditors to make their money in any other way than out of the funds in her hands, must, for present purposes, be taken for granted, as the plaintiffs' Counsel offered evidence to prove these facts, and the Judge *a quo* refused to receive the testimony, (vide Bill of Exceptions, p—.) The question then arises, has Mrs. *Davis* the legal right to retain the amount of her indebtedness to community in her own hands, and to refuse to pay over the same to the community creditors? Again, we refer to *Childers* v. *Johnson*, 6 Ann. p. 641, in which his Honor, Justice Slidell, in delivering the opinion of the Court, says: "Mrs. *Patton* is not the debtor of her husband, she is the debtor of the community; she owed this debt before marriage. The community derived no benefit from its creation. Instead of paying it with her own money, it has been paid with the money of the community. Is she permitted thus to enrich herself, at the expense of the community, and of *bona fide* creditors of the community? Clearly not.

In this state of the case, viz: Mrs. *Davis* having in her hands a fund pledged to the community creditors, (*Claiborne & Mather*, v. their creditors, 18 L. R., 504,) which they haye the right to demand, and which she illegally withholds, (*Childers* v. *Johnson*,) what course is to be pursued to have the benefit of that right, which the law accords, and which the decision of your predecessors have solemnly awarded to them? Is there any other remedy which your Honors can think of and adopt, but the proceedings in garnishment, or to force Mrs. *Davis* to liquidate the community *pro hac*, with the view of compelling her, as was done in *Childers* v. *Johnson*, to bring the funds into court for distribution among the creditors? Strike from beneath us these remedies, and "the last plank to which we may cling is shivered."

The lower court has not, in the abstract, denied our right to liquidate; but virtually, such is his decision. He makes that right dependent upon a dissolution of the community; dependent upon a condition over which we have no control; which may continue for months, nay, years, and leave us, when destiny and not ourselves have brought about the period for action, nothing but a shadow to pursue. We think, respectfully, that the decision of the District Judge is in violation of law, and we proceed to give your Honors our reasons for thus thinking.

1. It gives to the plaintiffs a right without a remedy, 5 Ann. 758.

2. The view of the lower Court in not permitting a liquidation of the community of acquets and gains, until after its dissolution, is in violation of settled principles of law.

We take it for granted, that your Honors will admit the following propositions: 1st. That the plaintiffs, who are creditors of the community, have the same right of action against the wife, for the recovery of a fund pledged by law to such creditors, for the discharge of their debt, as the husband possesses: and 2d. That the rights of the husband, and consequently of the creditor, (so far at least, as the recovery of the aforesaid fund is concerned,) are, in the liquidation of the community of acquets and gains, similar to the rights of a partner for an account from his commercial copartner.

A simple action for an account of the copartnership dealings, when not containing a prayer for the dissolution of the concern, though heretofore, and to a

great extent allowed by the early decisions of the English Courts, has of lat' fallen somewhat into disuse; but there has been no disturbance of thos' authorities, so far as they permitted the action of account to lie, even in the absence of a sought-after dissolution, for the purpose of redressing grievances which would otherwise remain unredressed, or righting a wrong that would otherwise be beyond all reach and remedy; and upon that principle, it has continued to be laid down as a rule, that one partner has a right of action against his copartner for the rendition and liquidation of accounts, with the view of reaching, for the benefit of the copartnership creditors, who would otherwise remain unpaid, a copartnership fund in the hands of one of the copartners.

"The Roman law contained doctrines, which in some measure proceeded, upon the considerations and distinctions herein above expressed. Ordinarily, the action, *pro socio,* did not lie to enforce a right to a general account between the partners until after the dissolution of the copartnership. But in special cases, an action *pro socio* lay for an account during the existence of the partnership. If one partner was prevented by the others from an equal participation in any of the partnership property, he might, even during the continuance of the copartnership, maintain the action *pro socio.* Pothier Pond, book 17, title 2, No. 33. Story, on Partnership, p. 355, 3d edition, 1850.

In the case of *Harrison* v. *Armitage,* Sir John Leach was clearly of opinion that one partner might file a bill against another for an account, without praying for a dissolution, since it was the only remedy he had; and in a still later case, his Honor adhered to his former opinion, observing, that to refuse relief in these cases, except upon the terms of putting an end to the partnership, was contrary to the plain principles of justice. Furthermore, his Honor, in answer to an objection which had been raised for the defendant, that if the suit was entertained, he might be vexed by a new bill whenever new profits accrued, said, " what right has the defendant to complain of such new bill if he repeats the injustice of withholding what is due to the plaintiffs."

For report of the cases decided by Sir *John Leach,* vide Collyer on Partnership, Perkins' edition, p. 263 and 299.

In *Walworth* v. *Holt,* (4 Myl. and Cr., 619.) Lord Cottenham proceeded upon the enlarged and liberal view with which he had entertained in *Taylor* v. *Salmon,* (4 Myl. and Cr., 141,) wherein he says, " I have thought it the duty of this court to adapt its practice and proceedings, as far as possible, to the existing state of society, and to apply its jurisdiction to all these new cases, which, from the progress daily making in the affairs of men, must continually arise, and not" (as did the Judge *a quo,* when he asked where is the law authorizing these proceedings) "from too strict an adherance to forms and rules established under very different circumstances, decline to administer justice, and to enforce rights for which there is no other remedy."

But to the case of *Walworth* v. *Holt.* In that case a bill was filed by some of the shareholders of an insolvent stock company, praying that an account should be taken of all the partnership assets, and that such part as was outstanding might be brought in, and applied towards the satisfaction of the partnerships debts. A demurrer to the bill was filled and overruled. In his judgment, Lord Cottenham entered into a very full examination of the authorities on the subject, and also of the principle upon which they proceeded. His Lordship, according to the report of the case, in Collyer, 915, lays down in substance, the following, as his views of the question presented—a question closely analagous to the one now before your Honors. " When it is said that the court cannot give relief of this limited kind, it is, I presume, meant that the bill ought to have prayed a dissolution, and a final winding up of the affairs of the company. How far this court will interfere between partners, except in cases of dissolution, has been the subject of much difference of opinion; and the difficulty created by contrary opinions must be overcome upon this principle, that it is better to go as far as possible towards justice than to deny it altogether. If, therefore, it was necessary to go much further than it is in opposition to some higher sanctioned opinions, in order to open the door of justice, in this court, to those who cannot obtain it elsewhere, *I* should not shrink from the responsibility of doing so. It is true that the bill does not pray for a dissolution, and that it states the company to be still subsisting; but its object is to have the common assets realized and applied to their legitimate purpose, in order that the plaintiffs may be relieved from the responsibility to which they are exposed, and which is contrary to the provisions of their common contract, and to every principle of justice.

In *Knowles* v. *Houghton*, (says Lord Cottenham, in the case under review,) the court did not consider the dissolution of the partnership as a preliminary necessary before directing the account. In *Hichens* v. *Congreve*, continues the same Judge, 4 Russ. 562, the bill was on behalf of the plaintiff and the other shareholders, not praying a dissolution, but seeking only a repayment to the company of certain funds alleged to have been improperly abstracted from the partnership property by the defendants, who were copartners; and Sir Anthony Hart, overruled a demurrer, and his decision was affirmed by Lord Lyndhurst. Collyer, on Partnership, Book 5, Chap. 1, §1130, Perkins' edition, 1848.

The principle above enunciated by Lord Cottenham, viz: that an action for account will lie, where no other remedy can be found to force a copartner to disgorge the partnership fund in his possession, have been recognized and acted upon to their fullest extent, by the Master of the Rolls, in *Richardson* v. *Hastings*, 7 Beav. 323.

*Fiuthorne* v. *Weston*, 3 Hare, 387. The Vice Chancellor says, "The argument for the defendant, turned wholly upon the proposition, that a bill praying a particular account is demurrable, unless the bill seeks and prays a dissolution of the partnership. That there may be cases to which the rule thus laid down is applicable, I am not prepared to deny; but the law as laid down in the case supporting that position, was never admitted to be of universal application. The unequivocal expression of the opinion of Lord Cottenham, in *Taylor* v. *Davies*, and *Walworth* v. *Holt*,—of the Vice Chancellor of England, in *Miles* v. *Thomas*, and of Lord Langdale, in *Richardson* v. *Hastings*, shows that there is no such universal rule at the present day; and I cannot but add, that it is essential to justice, that no such universal rule should be sustained. It is unnecessary to say that the court will go as far as it can to protect the rights of the parties; and I have no doubt it may interfere to support as well as dissolve a partnership." The above was a case of partnership for a certain term, and the bill was filed during the term. The Court held that a bill for a partnership account, during the existence of a partnership, is not demurrable merely on the ground that a dissolution is not prayed. Note to Colyer, p. 267. Let us, however, in our effort to convince the court that a dissolution of the community is not a *sine qua non* to the liquidation and settlement of the community accounts; a point which induced the District Judge to decide adversely to the plaintiffs in this action; refer your Honors, to the opinion of some of the American Courts and Jurists.

Mr. Chancellor Kent, in *Duncan* v. *Lyon*, 3 John Ch., 360, 361, in speaking of the action for account, says: "I do not find that even matters of account between copartners belong exclusively to courts of equity, though in practice they may be confined there. Courts of law and equity have concurrent jurisdiction in matters of account, and it is conceded that an action of account may be brought by one partner against another. I have not been able to discover why that action has so totally fallen into disuse."

In 1. Story, Eq. Jur., §671, Justice Story remarks, "that courts of equity may, perhaps, interpose and decree an account where a dissolution is not prayed for nor taken place; although, ordinarily, they are not inclined to decree an account, unless under special circumstances, if there is not an actual or contemplated dissolution.

*Debleux & Matthews*, for defendants:

To the first ground defendant answers that the wife cannot be garnisheed by a judgment creditor of the husband during the existence of the marriage.

1st. Because the process of garnishment was given by law, to make the rights and credits of debtors in the hands of third persons available to satisfy the claims of their judgment creditors, and the wife is not a third person with regard to her husband in a technical sense, and is not such a third person within the provisions of the statute of the 20th March, 1839, (sec. 13, p. 166) as can be made subject to the process of garnishment at the suit of judgment creditors of her husband—5 Rob. 25.

2nd. Because she cannot in any manner be indebted to her husband, for she is incapable by law of contracting with him, and defendant is not within any exception to that law; and because she cannot be so indebted to her husband as to give him any right of action against her and plaintiffs as his judgment creditors can l ave no greater rights against defendant on account of such indebtedness than her husband could have—13 L. 570; 5 Rob. 333; 8 N. S. 330; 3 A. 319.

KELLY
*v.*
ROBERTSON.

3d. Because she cannot possess and detain either the separate property of her husband or the property of the community between her and her husband from him or his creditors, he or they having the right at any time to have it seized under execution to pay his debts, and hence there can be no reason or necessity whatever for suing defendant as garnishee.

To the 2nd ground of plaintiff's petition already stated, defendant answers that the community between her and her husband has never been dissolved, and that she is not capable of accepting or renouncing a community until that community is dissolved in some legal manner, and that any act of acceptance or renunciation on her part before that time is absolutely null and of no effect—C. C. Art. 978. The delusion under which the plaintiffs seem to be laboring in this part of their petition is this—that because the defendant in the suit No. 3091 on the docket of this Court prayed for a dissolution of the community and a partition of its effects, which prayer and community she afterwards renounced, yet still, plaintiffs think this is to be construed as an acceptance of the community by which she is bound for all time to come, notwithstanding the refusal of this Court to dissolve the community in the suit cited.

To the third ground above stated of the petition, defendant replies that the community between her and her husband has never been dissolved, and that until its dissolution there can be no liquidation of it—that there is no law authorizing such judicial proceedings as plaintiffs invoke in this part of their petition.

To the fourth ground of the petition above mentioned, defendant says that according to plaintiffs' own showing, the debt sued for was contracted during the marriage of her and her husband, *Charles H. Davis*, and is consequently a debt for which the separate property of the said *Davis* and that of the community under his control, is alone bound, unless it can be shown that it was contracted for or enured to her separate benefit and her separate advantage, and this she expressly denies.

"To make the wife personally liable for the debts contracted during the existence of the community, the debts must have been incurred for her individual use and for her separate advantage." This has been too long the settled law of this State to be questioned or discussed now—vide 7 M. 465, 5 N. S. 54, 7 N. S. 65, 10 L. 146, 6 Rob. 64, 2 Ann. 440 and 579, 5 Ann. 173, 495, 572 and 586—C. C. 2412.

OGDEN, J. The controversy between the parties to this appeal commenced by the intervention of *Kelly, Conyngham & Co.*, in a suit which was brought by *Tennessee Robertson*, wife of *Charles H. Davis*, against her husband, for a separation of property. The case was decided at the last term of this Court, and will be found reported in the 9th Ann. The present plaintiffs representing the intervenors in that suit, and seeking in this action to render the wife liable for the debt of eight thousand four hundred and thirty-five dollars forty-three cents, for which they recovered judgment, on their intervention in the former suit against the husband alone. The community between *Davis* and his wife is still existing. The debt for which the plaintiffs have a judgment against *Davis* is a debt for which the community is liable, and the grounds of the present action against the wife, are :

1st. That although it was a debt contracted during the marriage and for which the husband as head and master of the community is liable, the wife is also liable for it personally, because it was contracted for· and enured to her separate benefit and advantages.

2d. That pending the suit brought by the wife for a separation of property she accepted the community of acquets and gains, and is therefore liable for one half of the debt.

3d. That the wife is indebted to the community in an amount exceeding the judgment the plaintiffs have obtained against her husband, and is liable to be garnisheed as a debtor of the community.

4. That the creditors of the community have a right to demand that there should be a liquidation of the community, and that the wife should be compelled to bring the amount of her indebtedness into Court, in order that the same may be paid over to the creditors of the community, according to their respective rights and privileges.

An exception was filed by Mrs. *Davis*, to the jurisdiction of the Court, on the ground that her legal domicil was in the Parish of Iberville where her husband had his domicil. The evidence shows that Mrs. *Davis* has always continued to reside on her plantation in the Parish of East Baton Rouge, where she resided at the time of her marriage, and where after marriage the matrimonial domicil was established. Her husband is made a party defendant with her in the same suit, and has submitted to the jurisdiction of the Court, and there appears to be no ground for the wife's objecting to being sued at her actual domicil, which the husband recognizes in the same suit to be his own. The exception to the jurisdiction was properly overruled.

The first ground of the plaintiff's action, is that the debt was contracted for and enured to the separate benefit and advantage of the wife. The right of the plaintiffs in this respect are reserved in the decree rendered by this Court on the intervention of the plaintiffs in the suits between Mrs. *Davis* and her husband. Mrs. *Davis* in her answer to interrogatories in this suit has admitted that two of the sums of money paid by *Kelly, Conyngham & Co.*, on the orders of her husband were for debts due by her anterior to the marriage, to-wit: $803 1or a note give by her to *Haney*, and $1000 for amount of a note due by her to *Laurica Talbot*, the principal and interest of which when paid, it appears, amounted to $1076 67.

The majority of the Court are of opinion that as these debts were paid by drafts of the husband on *Kelly, Conyngham & Co.*, which constituted charges against the community, the plaintiffs have no claim therefor against the wife separately. My own opinion on this point differs from that of my brother Judges.

The attempt to garnishee the wife and render her liable for an alleged indebtedness to the community, finds no support in any of the principles of our law, applicable to the rights and obligations of married persons, or to the nature and character of the conjugal partnership. It is sufficient to say that the object of our law which confers upon a creditor who has a judgment against his debtor, the right of resorting to the process of garnishment, was to enable the creditor to exercise for his own benefit all the rights of action which the defendant in execution could exercise against his debtors, but that it certainly was not intended the creditor should exercise any greater right than his debtor himself could. The husband who is the judgment debtor in this case, has no right of action against his wife, during the existence of the community, for any sums of money which he may have expended for her benefit, either from his own separate funds or from the funds of the community, an 1 his wife cannot therefore be garnisheed, by either the individual creditors of the husband or by the creditors of the community.

It is equally clear that this suit cannot be maintained for an account of the community transactions, with a view to its liquidation, in order to establish an indebtedness on the part of the wife to the community, and thereby render her liable for the debt due to the plaintiffs by the community. Whether the community is to be viewed in the light of a legal entity or not, it is certain no suit

KELLY
*v.*
ROBERTSON.

can be brought either by or against this ideal being. The husband is its sole representative during its existence, and the law has given him no power to provoke its dissolution, except by an action for separation from bed and board or for a divorce. The wife is not bound for the debts of the community, of which her husband is the head and master while that community subsists, and when it is dissolved she has the right by renouncing, of exonerating herself from the payment of any of its debts. Whatever right one of the spouses may have to claim a recompense from the other for funds of the community employed for the separate benefit and advantage of such spouse, either in the payment of his or her debts, contracted anterior to the marriage, or in the increase and improvement of the hereditary property of such spouse, this right can only be exercised at the dissolution of the community. The community under our laws consists only of acquets and gains, made during the marriage. They are liable to seizure for the debts contracted by the husband during the marriage, and the plaintiffs have a right to seize under their judgment against *Davis* any objects belonging to the community in possession of the wife. The buildings and improvements which have been erected on the wife's plantation during the marriage are not objects belonging to the community, to the extent to which, at the period of the dissolution of the community, it shall be determined the wife's land is then enhanced in value by these improvements, the husband or his heirs, will be entitled to the award of one half of such increased value, but at present nothing is done by the wife on that account, and it may be that on the dissolution and final settlement of the community hereafter, the wife may be able to offset any such claims, by claims that she may have against the husband for a similar improvement of his own hereditary property during the marriage.

It is therefore ordered and adjudged, that the judgment of the Court below be avoided and reversed, and that there be judgment in favor of the defendant *Tennessee Robertson*, with costs in both Courts.