[Civ. No. 12444. Second Appellate District, Division Two.—November 22, 1939.]

In the Matter of the Estate of ROBERT M. TURNER, Deceased. ELEANOR M. TURNER, Appellant, v. ADA C. TURNER, Administratrix, etc., Respondent.

Paul C. Hill for Appellant.

Melvin E. MacKinnon and Philip B. Kehr for Respondent.

MOORE, P. J.—This is an appeal from a judgment in favor of the surviving wife of the intestate decedent and against his niece. The decree settles respondent's final account and adjudges that the community estate is entitled to reimbursement from the separate property of decedent to the amount of community funds expended by decedent in payment of taxes and assessments levied against decedent's separate property. The appellant also appeals from the order denying her motion for a new trial.

The decedent married respondent on April 29, 1916. They lived together as husband and wife until his demise on April 18, 1938. During the period mentioned, decedent was a police officer and received a salary ranging from $125 to $225 per month, his only income. Prior to said marriage, decedent

purchased two parcels of property, to wit: Parcel 2, September 5, 1908, then of the value of $800 and parcel 3, December 4, 1911, then of the value of $200. At the time of the death of decedent, said parcels were worth respectively $4,700 and $2,000. Said parcels continued to be at all times the separate property of decedent, and decedent was always custodian of the community funds out of which decedent paid, on account of taxes and public improvements on both parcels a total of $2,655.43.

The question for our determination is: Should the amounts paid by decedent for the preservation of his separate estate be now paid to the community survivor?

I. Appellant proposes that the only deductions chargeable to the separate estate of the decedent are those sums that might have been invested by the husband for the purpose of improving and appreciating his separate property. She contends that no such deduction is proper unless it has emhanced the value of the lands improved. The principle according to which improvements of separate property are chargeable against a separate estate have no application to the instant facts, and the authorities cited by appellant are beside the question. (*Falconer* v. *Falconer*, 167 La. 595 [120 Pac. 19]; *Dillon* v. *Freville*, 129 La. 1005 [57 So. 316]; *Dakan* v. *Dakan*, 125 Tex. 305 [83 S. W. (2d) 620]; *Clift* v. *Clift*, 72 Tex. 144 [10 S. W. 338]; *Gilroy* v. *Richards*, 26 Tex. Civ. App. 355 [63 S. W. 664]; *Waggaman* v. *Zacharie*, 8 Rob. 181 [La.]; *Kelly* v. *Robertson*, 10 La. Ann. 303.)

It was not the theory of the trial court and it is not the theory of respondent that the separate estate of decedent is being charged with any sums expended for its improvement. What was determined was that the surviving wife should now be credited with the sum of $2,655.43 paid out by decedent for the protection of his own property from perilous liens. It is true that general taxes do not increase the value of property; their payment is not an improvement; but it is certain that the payment of general taxes as well as the payment of special assessments for public improvements do preserve the properties from foreclosure of senior liens.

II. There are no definite guides in California decisions for determining whether or not the community estate is entitled to reimbursement for moneys paid for such taxes and

assessments. All of the California cases arose out of payments made by the husband out of community funds for improvements of his wife's paraphernal property and no lien is held to have been created in the husband's favor as against the community estate. (*Dunn* v. *Mullan*, 211 Cal. 583 [296 Pac. 604, 77 A. L. R. 1015], and authorities cited.) But in making such expenditures the husband is presumed to have made a gift to his wife. It is presumed that it was his intention "to advance the money for the benefit of his wife's estate and that it was to accrue to her interest". (*Carlson* v. *Carlson*, 10 Cal. App. 300 [101 Pac. 923].) The reasons given for this holding are two, *viz.*: (1) he is presumed to have intended a gift because (2) he had authority to control the disposition of community funds. (*Dunn* v. *Mullan*, *supra*.)

In 31 Cor. Jur., sec. 1179, it is said that the working rule upon which said questions are solved is that the several estates will be regarded as separate entities, the integrity of each of which will be preserved either by specific restitution of its own property or by mutual credits and charges where such restitution cannot be made; and that the community has a claim against the separate estate of either spouse for expenses properly incurred in behalf of such estate. This is clearly the rule in all cases involving improvements made on a separate estate out of community funds except cases mentioned in the next preceding paragraph in which the husband makes improvements on the wife's paraphernal property. (*Legg* v. *Legg*, 34 Wash. 172 [75 Pac. 130]; *Shaw* v. *Bernal*, 163 Cal. 262 [124 Pac. 1012]; *Provost* v. *Provost*, 102 Cal. App. 775 [283 Pac. 842]; *Dunn* v. *Mullan, supra*; *White* v. *Hebbard*, (Tex. Civ. App.) 89 S. W. (2d) 482.) In the Provost case, *supra*, it was held that the failure to reimburse the community "would be to permit the authority of the husband in controlling the community property given him in the interests of greater freedom in its use and for its transfer for the benefit of both himself and his wife, to become a weapon to be used by him to rob her of every vestige of interest in the community property which the law has expressly vested in her. Such a conclusion would violate every sense of justice and outrage every principle of fair dealing known to the law". It is true that that case involved the

value of "improvements" made on the husband's lands, but the language quoted may as well have been applied to his payment of taxes levied on his separate estate.

To hold that the surviving wife should not recover moneys paid out by her husband as head of the community and as manager of the community estate for the protection of his separate estate would operate to her loss in all cases where his collateral heirs assert their rights of heirship because of his intestacy. Innumerable situations may occur where the husband has no income but his salary, which is community, while his unimproved separate properties require enormous outlays of money for taxes to say nothing of the endless assessments for public improvements. The entire community income over a period of years would be consumed in conserving the titles to his properties by the expenditure of community funds, only to leave the surviving widow a beggar at his grave with his collateral kindred demanding their portions of his "separate estate".

In the case of *Cervantes* v. *Cervantes*, (Tex. Civ. App.) 76 S. W. 790, the husband abandoned the wife, who thereafter used community funds to pay the taxes on her wayward husband's separate estate. It was held that the husband's lands were liable to the wife's heirs for one-half the cost of the improvements and taxes. "Taxes were expended to preserve the separate estate," said the court, "and should be a charge on it." There is no more reason why the community should pay decedent's taxes than to pay off a mortgage on his estate.

III. The contention made by appellant that if any credits should be allowed respondent, it should be for only one-half. Apparently she bases her proposal upon the language of the Cervantes case, which allowed the estate of the widow credit for one-half of the sums paid for taxes. But her situation in Texas was different from what it would have been in California. In Texas the widow, as survivor of the community, is entitled to only one-half of the community estate while in California she takes the whole of it in the absence of testamentary disposition.

For the reasons herein indicated, the judgment and order are both affirmed.

Wood, J., and McComb, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 11, 1940.

Edmonds, J., voted for a hearing.