## BROOKS v. UNITED STATES.
### Civ. No. 8135.

United States District Court
S. D. California, Central Division.
June 20, 1949.

---

Farrand & Farrand, George E. Farrand, Knox Farrand, Ross C. Fisher, Stephen M. Farrand, Los Angeles, Cal., for plaintiff.

James M. Carter, United States Attorney, E. H. Mitchell, Assistant United States Attorney, Eugene Harpole, Robert D. Scott and James D. Pettus, Special Attorneys, Bureau of Internal Revenue, Los Angeles, Cal., Eugene Harpole, Los Angeles, Cal., for defendant.

McCORMICK, Chief Judge.

This is an action for the recovery of federal estate taxes assessed and collected by defendant in relation to the estate of John Hudson Poole, deceased.

As a result of a pretrial hearing and a trial on the merits the crucial and ultimate question for decision is the ascertainment as to whether under the entire record before the court the plaintiff has sustained her claim that the Government has wrongfully collected $11,071.97 from her by the refusal of the Commissioner of Internal Revenue to deduct from the gross estate of decedent Poole half of $88,243.64 as her share of community property under applicable laws of the State of California.

It has been conceded that the plaintiff has the capacity to maintain this suit and that it is brought pursuant to Section 41 (20) [now § 1346], Title 28, United States Code Annotated. No question is raised as to the required statutory steps having been duly taken by plaintiff before bringing suit or as to her right to sue the United States and not the Collector of Internal Revenue in this court. Nor can there be any question under the record, that the plaintiff's community property rights are to be measured in federal estate tax laws as such existed prior to the 1942 Revenue Act.

Summarizing the record before us, the evidence clearly establishes the following basic facts:

John Hudson Poole, a retired colonel of the United States Army, died August 31, 1940. He and plaintiff (then Miss Reeta Walker) were married on May 11, 1933. They were residents of the State of California at the time of the marriage and continued to reside therein until the husband's death. Their family life was a very happy one.

At the time of their marriage Colonel Poole was a wealthy man, while plaintiff was not a person of means and worked for her living as a secretary. She had obligations to give financial aid to members of her family.

Immediately after their marriage Colonel Poole brought up the subject of their respective financial positions. At his suggestion and within two weeks after their marriage he and the plaintiff made an oral agreement that one-half of any community property which might be earned during their marriage would be set apart to Mrs. Poole and would not be consumed or expended in living or other expenses, and that all expenditures for living and maintenance of household, for traveling, and other items would be paid out of his separate income and estate. This preservation of her half of the community earnings thus agreed upon was intended to give plaintiff some degree of financial independence and also enable the plaintiff to continue with her own financial obligations toward her own family.

During their marriage Poole rendered services as guardian and agent of an es-

tate of his son by a former marriage, and in a civic capacity, for both of which he received compensation. This compensation was admittedly community income. Currently as it was received this community income was entered in the general cash receipts and disbursements book of decedent. Decedent and plaintiff each reported one-half of it on their income tax returns. Some time in the year 1939 and after this community income had accumulated several years Poole caused ledger sheets to be prepared where there was assembled in a convenient place the record of plaintiff's half of said community income certainly from as early as 1934 and probably from the time of the marriage of Poole and the plaintiff. This consolidated memorial was labeled "R.W.P. (Plaintiff's initials) Community Prop. Acct.," and was prepared from the income tax returns which in turn were prepared from Colonel Poole's year to year cash receipts and disbursements record.

In 1939 at the time he directed the preparation of the assembled items and entries Poole told the plaintiff and two of his employees that he intended to invest her half of the community property as reflected on his books, but he died on August 31, 1940 before doing so. A total of $88,243.64 in community earnings was shown to have been received in cash during marriage, of which plaintiff's half amounted to $44,121.82.

Upon his death probate and tax proceedings were duly instituted. There existed in his estate at the date of decedent's death personalty assets which can properly be considered cash or the equivalent of cash in an amount in excess of plaintiff's half of the community property. In the probate proceedings of Poole's estate in the State court the California Inheritance Tax Department found that $88,243.62 in community property existed and the State tax was settled in accordance with such finding. The Superior Court of the State of California in and for the County of Los Angeles where said probate proceedings were duly pending, after a hearing made and entered an order in which that court found on the basis of the documentary and oral evidence presented to it that

all decedent's estate was his separate property except the sum of $88,243.62, which was the community property of decedent and plaintiff, and the court directed that the executor, a blood relative of decedent but no relative of Mrs. Poole, deliver her half to plaintiff in cash. Said order was based upon a petition for partial distribution which was duly filed and regularly set for hearing and of which notice was duly given pursuant to applicable law.

A federal estate tax return was filed showing that Poole had an estate of $1,-340,849.12, from which plaintiff's half of the community earnings was deducted, leaving a gross estate of $1,296,727.31. In auditing the said estate tax return the federal taxing authority allowed no community property deduction whatsoever and assessed a deficiency attributable in part to the inclusion in the gross estate of plaintiff's half of the community property as well as the decedent's. The deficiency was paid. All causes of action for tax refunds were distributed to plaintiff by order of the State court and she filed claim for refund on April 23, 1943, based on the disallowance of the deduction for her half of the community property. The claim for refund was rejected by a letter from the Commissioner of Internal Revenue dated April 25, 1947, stating in part: " * * * The deduction claimed as to the widow's community property interest is disallowed as it is held that it has not been shown that the gross estate of the decedent as of the date of death included assets in which the surviving spouse owned a vested community property interest."

■■ We think initially there should be some clarification of the term "community property" as it is used in the State law applicable to this action. This observation is made because of the repetitive use in the defendant's brief of the phrase "synthetic community property." Ever since the enactment of Section 161a of the California Civil Code in 1927 the interests of husband and wife in the community property have been genuine and vested. It is defined by the Code as a "present, existing and equal" interest of the spouses, the consequence of which has been to impose tax liability

for one-half of the community property on each spouse. United States v. Goodyear, 9 Cir., 1938, 99 F.2d 523; Hernandez v. Becker, 10 Cir., 1931, 54 F.2d 542. The status of community property is fixed at the time of acquisition. Palen v. Palen, 28 Cal.App.2d 602, 83 P.2d 36, Section 687, California Civil Code. Inasmuch as all of the components going to make up the aggregate community earnings of $88,243.62, including the payment of a $5,000 item on January 3, 1934, were acquired during coverture, the interest of the plaintiff therein is fixed, definite and secure under applicable laws of the State of California.

In determining the gross estate of Poole for the purpose of computing the federal estate tax we must look to State law. Lang v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319; Greenwood v. Commissioner of Internal Revenue, 9 Cir., 1943, 134 F.2d 915. This settled principle, however, must be applied here in the light of the correlative doctrine that the burden of proof in judicial controversies between a taxpayer and the Commissioner of Internal Revenue concerning estate taxes is on the taxpayer. It is not a light burden because of the presumption that attends official actions of the Commissioner. But it is securely sustained by clearly showing in court that the Commissioner's determination was arbitrary or erroneous. In a careful appraisal of the evidence in the record before us we cannot say that the determination was arbitrarily reached but we think it is clearly erroneous. In reaching this conclusion it is but fair to state that we have perhaps had a fuller opportunity to evaluate the situation shown by the record than did the Commissioner, by reason of the personal appearances of the witnesses and the giving of their testimony in open court with the benefit of cross-examination by counsel for the Government.

The rule of liberality as regards the right of husband and wife to deal with each other concerning respective interests in property is in California quite like that which our Court of Appeals has found to exist in Arizona in the Greenwood case, supra. See, also, United States v. Pierotti, 9 Cir., 1946, 154 F.2d 758.

We have earlier in this memorandum stated our finding as to the making of an oral agreement by Colonel Poole and the plaintiff respecting their community property. Undoubtedly this agreement was valid and binding. Rogan v. Kammerdiner, 9 Cir., 1944, 140 F.2d 569. Its scope and effect continued fully during their entire married life and it operates for fulfillment into the estate of Colonel Poole and reaches all allocable property therein.

We see no merit in the claim that because the plaintiff's one-half of the community income cannot be traced or specifically identified in kind in the estate of decedent it must be considered non-existent and denied recognition by taxing authorities in an action such as the one at bar. See Estate of Tompkins, 123 Cal. App. 670, 671, 11 P.2d 886; United States v. Pierotti, supra.

Such a conclusion would nullify and repudiate a binding agreement, the existence of which is undeniable under the record and would also be a breach of the statutory trust which arose recurrently upon the acquisition of community income by Colonel Poole and was irrevocably impressed upon the estate of Poole for the benefit of the plaintiff as to her half ownership of the community property. Estate of Turner, 35 Cal.App.2d 576, 96 P.2d 363.

The briefs of defendant's attorneys argue that this cause warrants invoking the presumption that the expenses of the family during coverture are paid from community earnings and therefore as such expense greatly exceeded the total community earnings, the wife's half was consumed and ceased to exist at the time of Colonel Poole's death.

But it should be noted that the presumption adverted to is a disputable one and that the effect of it can be removed by evidence which shows that it does not apply in the concrete case before the court. Estate of Smith, 1945, 86 Cal.App. 2d 456, 473, 195 P.2d 842. The evidence

before us completely outweighs the presumption asserted by the Government and entirely removes it from this case.

Defendant contends that under the provisions of Section 811(c) of the Internal Revenue Code, 26 U.S.C.A. § 811(c), the Commissioner should be sustained in holding that none of the items of property reported in the Federal Estate Tax Return filed by the executor of the Poole Estate were community property which should be excluded from federal estate taxation.

■ We think that Section 811(c) has no application to the situation shown by the record before this court. The plaintiff in the acquisition of her community property rights did in no way attain them by "transfer." They came into being by reason of marriage to Colonel Poole and not by any kind of transfer made by Colonel Poole. Her right to one-half of the community earnings inured at each acquisition of such earnings during coverture and were thereupon statutorily vested interests which under the evidence before the court continued in esse at the death of Colonel Poole.

Neither the recent decision of the Supreme Court in Spiegel v. Commissioner of Internal Revenue, 335 U.S. 701, 632, 69 S. Ct. 301, 337, decided January 17, 1949, nor Commissioner of Internal Revenue v. Bank of California, 155 F.2d 1, in our Court of Appeals, involved community property with its unique and specialized aspects which we think are essentially dissimilar to the trust entities under consideration in these two cited decisions. United States v. Goodyear, supra; Overton, Executrix, etc. v. Sampson, 9 Cir., 1943, 138 F.2d 417.

■ Finally, we are brought to a consideration of the scope and effect in this action of orders and decrees of the Superior Court of Los Angeles County, a court of general jurisdiction, sitting in probate in the matter of the Estate of John Hudson Poole, deceased. These judicial records were received in evidence over the objections of defendant as being immaterial to the issues in this action. We think this documentary evidence is material and was properly received at the trial as Plaintiff's Exhibits 4, 6 and 7.

The plaintiff claims that such decrees, which found the existence of community property in an amount of $88,243.64; that half of the community property was the property of decedent, and that $44,121.82 should be distributed and delivered to the widow (plaintiff herein) as her half of such community property, were binding upon the Commissioner in determining the plaintiff's community property interest and that in not so considering such decree the defendant has erroneously and illegally exacted payment of the amount sued for in this action.

Defendant argues that the orders of the State court and the Report of the California Inheritance Tax Appraiser which constitute such judicial records in evidence (1) were rendered in a non-adversary proceeding and are not binding upon the Commissioner of Internal Revenue, and (2) the records while mentioning community property in the sum of $44,121.82, fail to identify that property or to determine that it is not the converted separate property of the husband and therefore to be included in the gross estate of the decedent as "a transfer, by trust or otherwise * * * intended to take effect in possession or enjoyment at or after his death * * *" under Section 811(c) Internal Revenue Code.

We have already herein considered and, we think, shown the inapplicability, under the record before the court, of Section 811 (c) of Internal Revenue Code.

[11] There is an established fundamental principle which should be applied in finding the answer to the problem posed in this case as to the pertinency of the proceedings and decrees of the State court in probate in the Estate of the decedent Poole. It is stated in Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585, as follows: "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed."

■ It must be noted in this connection that the restrictive provisions in the Revenue Act of 1942 § 402(a, b), 26 U.S.C.A.Int.Rev.Acts, page 329, concerning the inclusion in "the gross estate" of a de-

cedent of community property rights are of no consequence under the record before us in this action; and unless there is found some infirmity in the State court decrees which settle property rights and interests, the determination of the local forum as to the nature, extent, and status of such things is conclusive as to their validity and as to the matters therein determined. See Blair v. Commissioner, etc., 1937, 300 U.S. 5, 10, 57 S.Ct. 330, 81 L.Ed. 465, also Estate of Richards, 1941, 17 Cal.2d 259, 109 P.2d 923.

█ In the probate proceedings in the Estate of Poole there were two orders which determined the existence of community property. One was the inheritance tax order which was rendered after inheritance tax proceedings before the Tax Department of the State of California. The other was the Order of Partial Distribution dated July 31, 1941, which directed the executor to distribute to the widow (the plaintiff herein) one-half of the community property which the court found to exist. This order was made upon the executor's verified First Account Current and Petition for Partial Distribution. Notice was given in the manner provided by law. Persons interested in the estate had the opportunity to be present at the hearings, as is shown by the recitals and findings of the order here in evidence. The verified statements in the account and petition relating to community property were substantiated by sworn testimony of the executor, and the accountant of the executor, who had also for many years been the accountant and secretary of Colonel Poole. This decree, among other matters, stated: "After examining the documents and evidence submitted, the Court finds," etc. It was after such hearing on the merits that the order was signed. There can be no inference or intimation from the record or otherwise of any fraud or collusion in the presentation of the matter to the probate court or in the making of the decrees therein. All such matters were done and performed in good faith in the regular course of probate procedure pursuant to the laws of the State of California without prospective design or tax evasive motives, and we think the Commissioner of Internal Revenue is bound by the orders and decrees so made. Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Eisenmenger v. Commissioner, 8 Cir., 1944, 145 F.2d 103, 156 A.L.R. 741; Cf. McVeigh v. Commissioner, 1944, 3 T.C. 1246.

After the initial submission of this case defendant's counsel by consent and with the court's permission filed a supplemental brief in which it is contended that the Tax Court in Estate of Rainger v. Commissioner, Docket No. 8995, 12 T.C. 483, decided March 30, 1949, in a situation alike to the one at bar, held that there was no binding effect on the Commissioner of Internal Revenue, by a decision of a California probate court determining the status of community and separate property of husband and wife.

We have examined the Rainger decision and regardless of whether or not its conclusion will be found out of line with the decision of the Supreme Court in Freuler v. Helvering, supra, we think the factual situation in the record before us is essentially different from that in the Rainger case.

The determination of the widow's community property rights by the Commissioner of Internal Revenue in the matter before us must be under applicable laws and regulations pertaining to the Federal Estate Tax that were effective prior to the Revenue Act of 1942, while the Rainger matter was under the later Act. Moreover, in the Rainger probate proceedings it appears that the activities before the State Inheritance Tax Department were purely formal and the decision in probate was of no financial consequence to the State taxing system, but the whole procedure was pursued by the widow who was also the executrix "for the sake of the record" to be used in Federal tax matters. There is certainly no analogy in such a situation with the procedure in the Poole estate. Here the activities before the Inheritance Tax authorities and the outcome of the decision in probate did make a money difference so far as the tax payable to the State of California was concerned. Had the Poole estate been determined to be all separate property the tax would have been higher than it was, in view of the fact that a portion was determined to be

community property. This clearly shows an adversarial element which appears to have been entirely absent in the Rainger case.

We conclude by holding that the plaintiff has carried her burden of proof that the decision of the Commissioner of Internal Revenue is erroneous and contrary to law.

Findings and judgment are ordered for the plaintiff and against defendant upon all issues of the complaint and answer for the amount demanded in the complaint.

Attorneys for the plaintiff will prepare, serve and present same under the Rules within ten days from notice of this decision.