ANITA LEWIS, AND JOSEPH W. CHARD BY HIS GUARDIAN, WM. G. CHARD, *v.* S. D. JOHNS, J. L. SIMPSON, J. B. GALLAND, M. LEVENSOHN, AND J. G. DOLL.

WIFE—SEPARATE PROPERTY OF.—All property which can be shown by satisfactory testimony to belong to the separate estate of the wife, whether real, personal, or mixed, and all the rents, issues, profits, and increase thereof, are, under section fourteen of Article XI, of the Constitution, sacred to the use and enjoyment of the wife, and cannot be held to answer for the debts of the husband.

HUSBAND—RIGHT TO WIFE'S PROPERTY.—No legal or beneficial interest in the use or enjoyment of the wife's separate property passes, by the fact of marriage, to the husband, and the wife's right of property in the same is as complete after marriage as while a *feme sole.*

SAME.—The husband cannot by any independent act of his acquire an interest in the separate estate of the wife, nor by his supervision or labor can he acquire any interest in the increase of the same.

HUSBAND'S LABOR ON WIFE'S PROPERTY.—In the absence of an express agreement to that effect, there is no implied obligation on the part of the wife to compensate the husband for his supervision of and labor bestowed upon her separate property.

APPEAL from the District Court, Fifteenth Judicial District, Tehama County.

The facts are stated in the opinion of the Court.

*W. S. Long,* for Appellants, cited *George* v. *Ransom,* 15 Cal. 322, *Spencer* v. *Ward,* 20 Cal. 674, and *Mahone* v. *Grimshaw,* 20 Cal. 175, 176.

*Wm. H. Rhodes,* for Respondent.

The only question presented is this :

Are the products of a wife's lands, not of spontaneous growth, but resultant from a husband's industry solely, exempt by the statute of California from the husband's creditors ?

The appellants contend that they are not, whilst the respondents advocate the contrary doctrine.

That such products are liable for the husband's debts contracted during coverture, is sufficiently settled by the following authorities, to wit: Wood's Dig. p. 488, §§9, 14.

The Supreme Court of California has recognized the civil law doctrine on this subject in the following cases : *Dye* v. *Dye,* 11 Cal. 167, *Meyer* v. *Pinzer,* 12 Cal. 253, *Tryon* v. *Luther,* 13 Cal. 493. (See also, *Snyder* v. *Webb,* 3 Cal. 86, *Haines* v. *Castro,* 5 Cal. 110, *Van Maren* v. *Johnson,* 15 Cal. 310, *Mott* v. *Smith,* 16 Cal. 556, *Smith* v. *Smith,* 12 Cal. 223, *Panand* v. *Jones,* 1 Cal. 575.)

The foregoing cases certainly establish the doctrine contended for, beyond controversy.

But there is one case reported which, on a superficial examination, would seem to advocate another view of the law. I refer to the case of *George* v. *Ransom,* 15 Cal. 323. There are some grave doubts as to whether this case is law. But, laying aside for the present those doubts, it is sufficiently clear from the fact that that case has no analogy with the present. There, the profits of the stock were in a measure spontaneous— at all events, without any active labor or agency of the hus-

band.   In the case at bar, however, the crop produced upon the wife's land was the direct result of the work and labor, the enterprise and credit, of the husband.   Hence, the case can have no bearing on the one at bar.

But, not only is the doctrine contended for by respondents the law of California, but equally so in all civil law countries whose systems are identical, or nearly so with ours.   Such is the French, Spanish, and Mexican civil law; such the law of Louisiana, and such the law of Texas.   Domat, White, in his Nov. Recop., Brown, in his Civil Law of Spain and Mexico, and innumerable decisions in Louisiana and Texas, affirm the principle, whilst there is really nothing to cause us to doubt it.

By the Court, SANDERSON, C. J.

William G. Chard—the father of Anita Lewis and Joseph W. Chard, the first being a married woman, and the latter a minor, plaintiffs and appellants in this case—in consideration of natural love and affection, conveyed to his said children the tract of land described in the complaint, in December, 1860. After the conveyance, Anita Lewis, and her husband, E. J. Lewis, moved upon the land in question, and resided on it from that time until the commission of the trespass alleged in the complaint, cultivating and farming the same.   In 1862, a crop of wheat was raised upon about one hundred and thirty acres of the land, amounting, as charged in the complaint, to about four thousand bushels.   At the time of the alleged trespass, about forty acres of this crop was cut and lying on the field, and the remainder standing ready to be harvested.   When in this condition the crop was levied upon by the respondent, S. D. Johns, Sheriff of the county, at the suit of his co-defendants against the husband, E. J. Lewis, alone, and upon his separate liability.   Anita Lewis and Joseph W. Chard, by his guardian *ad litem*, William G. Chard, sued for damages laid in the complaint at $3,675.   The case was tried by the Court without the intervention of a jury.

In addition to the facts already stated, the Court found that

" the farming business was carried on ostensibly in the name of the husband, E. J. Lewis; that he employed men, purchased seed wheat, and made contracts to be paid out of the proceeds of the growing crop; that he superintended the farm labor, and performed some himself; that there was no showing of any action taken by Joseph W. Chard in the business of the farm, other than the statement of the husband, Lewis, 'that the farm was carried on by his wife and Joseph W. Chard.'"

The judgment was for defendants, and plaintiffs appeal.

The Court below does not find as a fact that the suits against the husband, under which the Sheriff made his levy, arose out of any transactions connected with the farming business, and for the purposes of this opinion we shall assume that they did not.

The theory of the respondents is that the crop of wheat in question, although raised upon land which was the separate estate of the wife, was the common property of both, and therefore liable to be taken in execution for the husband's debts; or, if not the common property of both, the husband at least had some interest in the crop, which could be seized and sold under execution; and unless one branch or the other of this theory can be maintained, it is evident that the judgment must be reversed.

In *George* v. *Ransom*, 15 Cal. 322, the late Supreme Court held that so much of the 9th section of the Act defining the rights of husband and wife as declares the rents and profits of the separate estate of the wife to be common property was in conflict with the Constitution. Justice Baldwin, who delivered the opinion of the Court, said: " We think the Legislature has not the constitutional power to say that the fruits of the property of the wife shall be taken from her, and given to the husband and his creditors. If the constitutional provision be not a protection to the wife against the exercise of this power, the anomaly would seem to exist of a right of property in one divested of all beneficial interest; the barren right to hold in the wife, and the beneficial right to enjoy in the husband. One object of the provision was to protect the wife against

the improvidence of the husband; but this object would wholly fail, in many instances, if the estate of the wife were reduced to a mere reversionary interest, to be of no avail to her except in the contingency of her surviving her husband." There the property, which it was sought to subject to the payment of the husband's debts, was dividends, due from a corporation to the wife, upon certain shares of stock held by her as separate estate. Although the property in the present case is different in kind, it has a common origin, and is likewise the fruit of a separate estate.

We are unable to perceive any difference in principle between the two cases. Carried to its logical conclusions, the doctrine announced in *George* v. *Ransom* must afford a shield to the separate estate of the wife, in whatever form it may assume, against the attacks of the husband or his creditors. Under that doctrine, all property which can be shown to belong to the separate estate of the wife, by satisfactory testimony, whether the same be real, personal, or mixed, and all the rents, issues, profits, and increase thereof, whether the same be the fruit of trade and commerce, of loans and investments, or the spontaneous production of the soil, or wrested from it by the hand of industry, is, under the Constitution, sacred to the use and enjoyment of the wife, and cannot be held to answer for the debts of the husband.

The manifest object of the framers of the Constitution was to protect the wife, as well during the lifetime of the husband as after his death, should she survive him, against the consequences of his improvidence or misfortune, by securing to her, separate and apart from him, such property as she may hold in her own right at the time of marriage, and such as she may afterwards acquire by gift, devise, or descent. The Constitution, therefore, to that end, departs widely from the rules of the common law, and, in effect, provides that the relation of the wife to her property, so far as title, use, and enjoyment are concerned, shall not be prejudiced by the fact of coverture, and that no legal or beneficial interest therein shall thereby pass and vest in the husband. In this respect it does away

with the common law results of marriage, and preserves and continues in the wife the rights of a *feme sole*, and thus presents to her, already drafted and engrossed, a marriage settlement which is more solemn than private compacts, and is beyond the reach of legislative interference. Nor can the rights thus secured be frittered away by a judicial construction which can assign no better reason than a lingering fondness for the harsh ideas of the common law.

The wife's right of property in her separate estate after coverture is co-extensive with that which she possessed as a *feme sole*, and the Legislature may, as it has done, enact laws for its further assurance, (by throwing safeguards around the *jus disponendi*,) but cannot so legislate as to impair it in any degree.

It follows from what has been already said that the husband cannot, by any independent act of his, acquire an interest in the separate estate of the wife. It is even doubtful whether the Legislature can confer upon him, against her consent, a dominion over her property sufficient for the purposes of management or control. However that may be, it cannot go beyond that point, as we have already seen. That the husband cannot, by his management, supervision, or labor, acquire any interest in the estate itself, is conceded; and by parity of reason he cannot acquire any interest in the increase, for that is hers also, and upon the same terms—the latter being a corollary of the former proposition. There is no magic in the touch or manipulation of the husband by force of which separate is transformed into common property. If he acquires, as is contended by respondents, any right whatever as against his wife by virtue of his supervision and labor, it is not a right, in the nature of a lien, in the thing supervised, or upon which the labor is bestowed, but merely a right to compensation, and his creditors could only proceed by the process of garnishment. In the absence of an express agreement to that effect, there is no implied obligation on the part of the wife to compensate the husband for his services, and in either case there would be only an imperfect obligation which neither the hus-

band nor his creditors could enforce. The doctrine contended for would banish the husband from the premises of the wife, and deprive her of his counsel and guidance, for his presence there might bring ruin instead of affording protection. No such alternative is contemplated by the provision of the Constitution, so wisely intended for her benefit.

The judgment is reversed and a new trial ordered.