[Sac. No. 1958. Department One.—July 2, 1912.]

MARY J. SHAW, Administratrix of the Estate of J. W. Shaw, Deceased, Appellant, v. CHARLES BERNAL, Executor of the Will and Testament of Mary J. W. Shaw, Deceased, Respondent.

Husband and Wife—Deed to Wife—Presumption of Separate Property—Gift from Husband.—Under section 164 of the Civil Code, providing that "whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property," where a gift by the husband to the wife is essential to the theory

that the property conveyed to the wife is her separate property, such a gift on the part of the husband will be presumed. Such presumption, as between the husband and wife, while only *prima facie,* is controlling, in the absence of evidence showing a contrary intention on the part of the husband.

ID.—HOUSE BUILT WITH COMMUNITY FUNDS ON WIFE'S SEPARATE PROPERTY.—Where a husband deliberately constructs from community funds a building upon the separate property of his wife, in the absence of any sufficient agreement or undertaking to the contrary, as between him and her, the title to the building follows the title to the land, and is separate property of the wife, and neither he nor the marital partnership has any title to any portion of the property, either land or building.

ID.—COLLECTION AND APPROPRIATION OF RENTS BY HUSBAND.—Such vesting of the title in the wife as her separate property is not affected by the fact. that the husband received the rents from the building so constructed and placed them to his credit in a bank.

ID.—HUSBAND AND WIFE AS GRANTEES IN DEED—COMMUNITY PROPERTY.—The mere fact that both a husband and his wife were named as the grantees in a deed would not operate, under section 164 of the Civil Code, to require a conclusion that the property purchased was community property.

ID.—PRESUMPTION OF TENANCY IN COMMON IS PRIMA FACIE.—Where a conveyance is made to a married woman and to her husband, the presumption created by section 164 of the Civil Code, that the wife takes the part conveyed to her, as a tenant in common, is simply a *prima facie* presumption, except where a purchaser or encumbrancer in good faith and for a valuable consideration is concerned.

ID.—EVIDENCE CONTROVERTING PRESUMPTION—PURCHASE WITH WIFE'S SEPARATE PROPERTY.—Assuming that such a presumption exists in favor of the husband, evidence that the purchase was made by the husband wholly with money in his possession constituting the separate property of the wife is sufficient to controvert it, and to sustain. a finding that he acquired no beneficial interest in the property so purchased.

ID.—HUSBAND'S POSSESSION AND CONTROL OF WIFE'S SEPARATE PROPERTY—GIFT TO HUSBAND BY WIFE.—The mere acquirement of the possession of a wife's separate property by the husband, and his subsequent management and control of the same, all with her consent, do not show any intent on the part of the wife to make a gift of the property to the husband or to change its *status* from separate to community property. The presumption in such a. case is that the property continues to be the separate property of the wife and that the husband holds it in trust for her, and it devolves on the trustee claiming a gift or change in the *status* of the property to show the same.

APPEAL from a judgment of the Superior Court of Solano County. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

L. G. Harrier, and T. T. C. Gregory, for Appellant.

Vincent Surr, and Frank R. Devlin, for Respondent.

ANGELLOTTI, J.—This action, in the nature of an action to quiet title, was brought by J. W. Shaw against the executor of the will of his deceased wife, Mary J. W. Shaw, to obtain a decree that he is the sole owner of certain real property in the city of Vallejo, being lot 5 in block 265, and the west 18 feet 4 inches of lot 6 in the same block, according to the official map of said city, with the improvements thereon, the theory of the complaint being that the same was the community property of the spouses, and that, under the provisions of section 1401 of the Civil Code, he became the absolute owner thereof on the death of the wife. By his answer defendant denied the allegations of the complaint and alleged that said property was the separate property of the wife at the time of her death. J. W. Shaw having died before decision in the lower court, Mary J. Shaw, administratrix of his estate, was substituted as plaintiff. The findings were in favor of defendant, the court expressly finding among other things, that the property was purchased by Mrs. Shaw with her own separate funds, and also that J. W. Shaw and Mrs. Shaw did not acquire the property as community property, and that Mary J. W. Shaw was at the time of her death the sole and exclusive owner in fee of the whole of said property. Judgment was given decreeing plaintiff to be without any interest or estate in the property and that the whole of said property at the time of her death was the separate property of Mary J. W. Shaw, and that defendant is entitled to the sole and exclusive possession thereof for all purposes of administration. This is an appeal by plaintiff from such judgment.

The question presented on this appeal is whether the evidence is legally sufficient to support the findings.

J. W. Shaw and Mary J. W. Shaw were married in the year 1887, at which time Mrs. Shaw was a widow with four children, to three of whom she left all her property by will dated October 6, 1908. She died in the year 1909. The property involved in this action was purchased from F. E. Allen and wife in the year 1905, the deed therefor being dated January 4, 1905, and running to J. W. Shaw and Mary J. W. Shaw, his wife, as grantees. This property was generally referred to in the evidence as the "York Street property."

The consideration specified in the deed of this property was ten dollars and the actual consideration was $2,300 or $2,350. The evidence was clearly sufficient to support the conclusion that this consideration was wholly paid from the separate property of Mrs. Shaw. Mr. Shaw himself testified that he bought this property with the $2,350 received on the sale of lot 6 in block 250, Vallejo, with the improvements thereon. A deed evidencing such sale, dated January 3, 1905, from John W. Shaw and Mary J. W. Shaw, his wife, to John Johnson and Annie Johnson, his wife, was introduced in evidence. The actual consideration therefor, according to Mr. Shaw, was $2,350, and this $2,350 was the whole price paid for the York Street property, Said lot 6 in block 250 was purchased in 1897. Mr. Shaw testified that "I bought it from Timothy Healey" and paid for it "$500 with my wife's money that she received from France." He further testified that she received about two thousand dollars from Dr. Cells, her brother-in-law in France, that he "handled about $1,200 of it," and that he "bought lot 6 with $500 of that." He had no knowledge of the reason for the sending of this money to his wife and only knew that it "came from Doctor Cells in France." We deem it unimportant to determine the question elaborately discussed by counsel whether this two thousand dollars received by Mrs. Shaw from France, must be deemed to have been community property, in view of the *prima facie* presumptions in favor of community property as to all property acquired by a spouse after marriage. The deed given on such purchase, presumably executed according to the directions of Mr. Shaw, for according to his testimony he appears to have conducted all the negotiations, was introduced in evidence as one of his exhibits. It was

dated November 10, 1897, and ran from Timothy Healey and Bridget Healey, his wife, as grantors, to Mary J. W. Shaw, as sole grantee. At the time of the execution of this deed, section 164 of the Civil Code, after declaring substantially that all property acquired after marriage by either husband or wife, except that acquired by either spouse by gift, bequest, devise, or descent, with the rents, issues and profits thereof, is community property, provided, as it does now, as follows: "But whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property." It is settled that under this statutory provision, where a gift by the husband to the wife is essential to the theory that the property conveyed to the wife is the separate property of the wife, such a gift on the part of the husband will be presumed. (See *Alferitz* v. *Arrivillaga,* 143 Cal. 646, [77 Pac. 657]; *Fanning* v. *Green,* 156 Cal. 279, 282, [104 Pac. 308].) So here, if we assume that the evidence was not such as to warrant a conclusion that the two thousand dollars received by Mrs. Shaw from France was her separate property, which by no means do we concede, and if, in fact, the money paid for said lot 6, block 250, was community property, nevertheless the fact that the deed was caused by Mr. Shaw to be made to Mrs. Shaw as sole grantee gave rise to the presumption that Mr. Shaw intended a gift of the property to his wife as her separate property. This, it is true, was only a *prima facie* presumption as between husband and wife, but there was certainly nothing in the evidence *requiring* a conclusion that this presumption had been controverted. No explanation to show a contrary intention was even attempted by Mr. Shaw and the facts shown were not such as to compel a conclusion contrary to that of the lower court. The case in this respect is not as strong in favor of the husband as was that of *Fanning* v. *Green,* 156 Cal. 279, [104 Pac. 308], relied on by appellant, where the court in upholding the finding of the trial court in favor of the husband intimated very strongly that a contrary conclusion on the part of the trial court on the question of intent to make a gift would have been held to be sufficiently supported by the testimony. *Hammond* v. *McCullough,* 159 Cal. 639, [115 Pac. 216], relied on by appellant, was also a case where the

finding of the lower court was in favor of the husband, and this court simply held that there was sufficient legal support in the evidence for such finding.

Mr. Shaw thereafter built a house on said lot 6, block 250, using therefor seven hundred dollars of "the money that came from France," and, he claimed, about seven hundred dollars more of his own earnings. If we assume that all the money expended in constructing the house on this land was community property, it still remains that both the land and the building constructed thereon constituted separate property of the wife. A similar question was early decided by this court. The conveyance of land purchased with community funds had been by express direction of the husband, made to the wife, with the intent on his part to make to her a gift of the property. Subsequently the husband from community funds constructed a dwelling-house thereon. The court said: "The question is, who was the owner of the house when it was built under those circumstances. It admits of only one answer—the owner of the lot was also the owner of the house. It formed a part of the real estate, and the title to the home is necessarily included in the title to the lot on which it is erected, in the absence of an agreement sufficient to pass the title to the house alone. (*Peck* v. *Brummagin*, 31 Cal. 440, 448, [89 Am. Dec. 195].) This holding is in accord with the general rule stated in 21 Cyc. 1648, as follows: "Improvements made during marriage on the separate property of either husband or wife, although with community funds, will as a general rule belong to the spouse owning the separate property." An agreement between the parties may produce a different result as is implied in the above quotation from *Peck* v. *Brummagin;* creditors of the husband may perhaps establish a claim to improvements so constructed where they can show that the expenditure therefor was a fraud upon them (see *Maddox* v. *Summerlin,* 92 Tex. 483, [49 S. W. 1033, 50 S. W. 567] ; the wife might reach as community property a building erected by the husband from community funds on his separate property, for the very purpose of fraudulently depriving her of her interest therein (see *Smith* v. *Smith,* 12 Cal. 216, [73 Am. Dec. 533] ) ; but it is clearly the rule that where a husband deliberately constructs from community funds a building upon the

separate property of his wife, in the absence of any sufficient agreement or undertaking to the contrary, as between him and her  the title to the building follows the title to the land and is separate property of the wife, and neither he nor the marital partnership has any title to any portion of the property, either land or building. · The authorities hold that the most that the marital partnership may acquire under such circumstances, if anything, is a right to reimbursement to the extent of the value added to the property by the improvements.   Whether the right to reimbursement exists in such cases is a question not at all involved in this proceeding and we express no opinion thereon.   In support of the views we have expressed are the following authorities, in addition to those already cited: McKay on Community Property, sec. 249; Ballinger on Community Property, note to section ·19; 6 American and English Encyclopedia of Law (2d ed.) 324; *Rice* v. *Rice*, 21 Tex. 58; *Maddox* v. *Summerlin*, 92 Tex. 482, [49 S. W. 1033, 50 S. W. 567]; *Humphreys* v. *Newman*, 51 Me. 40.   The only expression of opinion that we have found that may be claimed to be in any way opposed to the views we have stated is in *Collins* v. *Bryan*, 40 Tex. Civ. App. 88, [88 S. W. 432] a case decided by the civil court of appeals of Texas.   There was absolutely nothing in the evidence relative to this property to take the case from the effect of the rule we have discussed.   The disposition of the rents received from the house constructed on said lot, viz., their collection by Mr. Shaw and the placing of the same by him in the bank to his credit, is immaterial in the determination of the question we have been discussing.

As we have said, the deed for the York Street property, the property here involved, ran to both Mr. and Mrs. Shaw, as grantees.   Mr. Shaw said that he bought this property, conducted the negotiations and gave the instructions "to the agent."   We have thus a case where real property was purchased by the husband wholly with money belonging to the wife as her separate property, and the conveyance therefor, presumably by the direction of the husband, was made to both husband and wife.   The evidence is not such as to compel the conclusion that Mrs. Shaw was ever made acquainted with the fact that Mr. Shaw was named as a cograntee with her in this deed or that there was any understanding between

him and her prior to or at the time of the purchase that he should be so named. The testimony of Mr. Shaw contains no such claim on his part. There was a small house upon the property, which Mr. Shaw moved to the rear of the lot and repaired at a cost of some nine hundred dollars. This was the residence of the family to 1907. Mr. and Mrs. Shaw then constructed four flats on the property at a cost of some five thousand seven hundred dollars, which they borrowed, executing a mortgage to secure their note for that amount to one Margaret J. Best. This mortgage covered the property here involved and also a lot purchased by Mr. Shaw with community funds on February 15, 1895 (lot 5, block 250, Vallejo). From about the year 1895, Mr. Shaw was employed as a machinist at the Mare Island Navy Yard, receiving from $4.16 to $4.48 per day. He collected the rentals from the flats, as to which his wife had full knowledge, and deposited both rentals and wages in the bank to his own credit, and the fund thus created was drawn on for all necessary expenses, including household expenses, repairs of the property, and payments on account of the mortgage debt. On July 19, 1907, he sold lot 5 in block 250 for three thousand dollars, and they built two additional flats on the property in controversy at a cost of some three thousand six hundred dollars or three thousand seven hundred dollars. New mortgages covering the property in controversy, given by both husband and wife to secure their notes, one dated July 19, 1907, for four thousand two hundred dollars and one dated March 1, 1908, for five thousand dollars were shown. After the building of the two new flats, Mr. and Mrs. Shaw lived in one of the flats. The present value of the whole property is about twelve thousand dollars. The foregoing matters were shown by the testimony of Mr. Shaw.

In view of what we have said as to the rule applicable where a husband voluntarily constructs with community funds buildings upon the separate property of the wife, there is nothing in the foregoing testimony to compel a conclusion that any part of the property here involved, land or improvements, was community property at the date of death of Mrs. Shaw. Even if we assume all the money put into the buildings constructed on this property to have been community property, the court was nevertheless warranted in

concluding that none of such property (land or buildings) was community property, if indeed it was not compelled to so conclude. There was nothing requiring a conclusion bringing the case within the operation of the rule referred to in *Title Ins. & Trust Co.* v. *Ingersoll,* 153 Cal. 1, [94 Pac. 94], as to a transmutation by agreement of separate property of the wife into community property, even if such an agreement as to real property constituting such separate property could be effectual if not in writing. (See *Yoakam* v. *Kingery,* 126 Cal. 30, 33, [58 Pac. 324].) And the mere fact that both Mr. and Mrs. Shaw were named as the grantees in the conveyance could not operate to require a conclusion that the property purchased was community property (Civ. Code, sec. 164). So that we know of no theory upon which it can be held that the conclusion of the trial court that none of this property was community property is not sustained by the evidence.

There remains for consideration but one other claim of plaintiff, a claim not presented by the complaint, which went entirely upon the theory that all of the property was community property, but which is made in the briefs and is involved in the claim of defendant that all of the property was the separate property of Mrs. Shaw at the time of her death. This was found and adjudged by the trial court. The claim is that one-half of the property was the separate property of Mr. Shaw. This claim has for its basis the fact that the conveyance of the property was to both Mr. and Mrs. Shaw as grantees. Section 164 of the Civil Code, after providing as we have already set forth, declares: "And in case the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her, as tenant in common, unless a different intention is expressed in the instrument." This presumption, like the one declared in favor of the wife where the conveyance is to her as sole grantee, is simply a *prima facie* presumption, except where a purchaser or encumbrancer in good faith and for a valuable consideration is concerned. It has been said that under this provision the legal *presumption* arising upon the face of such a deed as this "is that the grantees took the land as tenants in common, each one-half as his or her separate estate."

(*Yoakam* v. *Kingery,* 126 Cal. 32, [58 Pac. 324].)   Assuming that such a presumption exists in favor of the husband, as it is established that the purchase was made by *the husband wholly with money in his possession constituting the separate property of the wife,* we are satisfied that the trial court was warranted in concluding upon the evidence before it, as we must assume that it did conclude, that any presumption arising under such section was sufficiently controverted, and that the husband acquired no beneficial interest in the property so purchased.   There was nothing in the evidence to require a conclusion that Mrs. Shaw had ever done more in relation to the money derived from the sale of her lot 6 in block 250 than to intrust it to the custody and control of her husband.   As in *Title Insurance Co.* v. *Ingersoll,* 158 Cal. 483, [111 Pac. 364], "the relation of the parties and their conduct with respect to her money justified the court in preferring the inference that the understanding was that he was to act as trustee for her in the management and disposition of it."   It is well settled that "if a husband purchase lands with the separate estate of his wife in his hands, . . . or money put into his hands to invest for his wife, and take the title in his own name, a trust results to the wife" (1 Perry on Trusts, sec. 127), in the absence of a clear understanding to the contrary, had at the time of the purchase (Id., sec. 140).   (See, also, 3 Pomeroy's Equity Jurisprudence, sec. 1049; *Heinrich* v. *Heinrich,* 2 Cal. App. 479, 483, [84 Pac. 326].)   It was substantially said in *Title Insurance Co.* v. *Ingersoll,* 153 Cal. 1, 5, [94 Pac. 94], that it is well settled that the mere acquirement of the possession of a wife's separate property by the husband, and his subsequent management and control of the same, all with her consent, do not show any intent on the part of the wife to make a gift of the property to the husband or to change its *status* from separate to community property, that the presumption in such a case is that the property continues to be the separate property of the wife and that the husband holds it in trust for her, and that under such circumstances it devolves on the trustee claiming a gift or change in the *status* of the property to show the same.   The utmost that can here be claimed for Mr. Shaw in this regard, is that he held the dry legal title to an undivided one-half of the property, as trustee

for his wife, who was the sole beneficial owner thereof and entitled to have the same conveyed to her. If we assume this to be the situation there is no practical necessity for a reversal or for any modification of the judgment.

The judgment is affirmed.

Shaw, J., and Sloss, J., concurred.