[Civ. No. 6244.   Second Appellate District, Division Two.—December 27, 1929.]

MARIA PROVOST, Respondent, v. ANTHONY PROVOST et al., Appellants.

James H. Mitchell for Appellants.

Albert Sidney Brown for Respondent.

CRAIG, Acting P. J.—Appellant Anthony Provost and the respondent Maria Provost intermarried on October 20, 1904, and lived together until January 8, 1925, when they separated. Prior to this marriage said appellant acquired a small parcel of real property of the value of about $300, described as lot 33, block 2, of subdivision No. 1 of Dolgeville, in the city of Alhambra, known and designated for the purposes of this case as the "Alhambra property." Thereafter the spouses improved the same with community funds and enhanced its value to about $12,000. Following their marriage said parties acquired by their united efforts a parcel of real property which both alleged to be of the value of about $5,000, described as follows "The southwest quarter, section 21, the northeast quarter of the northwest quarter, the north half of the northeast quarter, and the southeast quarter of the northeast quarter, section 28, township 5 north, range 12 west, San Bernardino base and meridian, in the county of Los Angeles. On August 26,

1924, Anthony Provost conveyed to appellant Edna L. Gomes, his daughter by a former marriage, all of his right, title and interest in and to the Alhambra property, together with the improvements thereon.

On April 1, 1925, the respondent commenced an action for maintenance and support, wherein she alleged that the conveyance from Provost to his daughter had been made without consideration, without the plaintiff's knowledge or consent, and for the purpose of defrauding and depriving her of maintenance and support from its income; that she was advanced in years, and had no income, funds, employment or vocation, and was compelled to live for the greater part upon the charity of friends and relatives. Appellant Edna L. Gomes was made a party defendant, and the plaintiff prayed for possession of all furniture and furnishings, of the Alhambra property as a home pending litigation, a division of the community property, and a lien thereon to the extent of one-half the value of all improvements, or as an alternative that she be awarded all of the community property. By supplemental complaint desertion and wilful neglect by defendant Provost to furnish the common necessaries of life were alleged, and a dissolution of the bonds of matrimony demanded. The defendants answered jointly, admitting that the realty last herein mentioned, described as the "ranch property," was community, that it was of the value of $5,000, and that there were furniture, furnishings and farm implements of a value of about $250. They alleged that the Alhambra property was at the time of conveyance wholly the separate property of Anthony Provost, and joined issue upon the other material allegations of the complaint. Defendant Provost by cross-complaint alleged cruelty and desertion upon the part of his wife, and also prayed that a decree of divorce be granted.

After a trial before the court without a jury it was found that all of the allegations of grounds for divorce were untrue, and it was adjudged that neither the plaintiff nor the defendant Anthony Provost be granted a divorce. The findings of fact further recite that the Alhambra property was conveyed by Provost to his daughter for valuable consideration and without the plaintiff's knowledge, that it was the separate property of the husband and that he had a

legal right to convey the same, but that Mrs. Gomes had given nothing of value therefor; that both of the spouses were entitled to their support from its income and that they had no other means of support, but that said conveyance had been made for the purpose of depriving the plaintiff of her interest therein, and that Mrs. Gomes had collected all income therefrom since the date of conveyance. The trial court directed that each of the spouses receive one-half the income, if any, derived from the ranch property, or that in the event of sale, the proceeds be equally divided between them; that Mrs. Gomes retain title to the Alhambra property, but that Anthony Provost receive the income therefrom and pay to the plaintiff $40 per month, the balance, if any, to be devoted to his own use; that if said income be insufficient for the support and maintenance of both spouses, that this property be sold under execution and the proceeds applied in a manner best suited to their necessities. Liens in favor of the plaintiff and her husband were created and imposed thereon to secure the payment of said amounts.

The defendants appealed and here contend that the Alhambra property was at all times separate, that Anthony Provost had a legal right to convey it and conveyed the same for a valuable consideration, and that the trial court erred in imposing a lien thereon or directing that it be sold, as heretofore mentioned.

Section 137 of the Civil Code provides that in granting the husband or wife permanent support and maintenance the court "shall make the same disposition of the community property . . . as would have been made if the marriage had been dissolved." Sections 146 and 147 of the same code require, if a divorce be granted upon the ground other than of adultery or extreme cruelty, the community property shall be equally divided between the parties, and that whenever necessary for that purpose the court may order a partition or sale, and a division or other disposition of the proceeds. Hence it clearly results that as to the ranch property the findings and judgment were erroneous, since no division thereof was directed to be made through partition or sale. (*D'Arcy* v. *D'Arcy,* 89 Cal. App. 86 [264 Pac. 497].) In the case last cited it was held not error to award all of the community property

to a wife who alleged extreme cruelty, and was given custody of a minor child, even though her pleadings did not allege the necessity for such award nor pray that it be granted. In the instant case it was conceded by the parties, and was found by the court, that this parcel was community property, and that the sole means of support of either spouse in the absence of its sale must be derived from the income produced by the Alhambra property, which the findings and judgment imply may become insufficient.

A more serious problem is presented as to the legal status and propriety of the trial court's ruling as to the Alhambra realty and improvements placed upon a parcel of the husband's land by community endeavors.

That improvements made during the marriage on separate property of either husband or wife with community funds will as a general rule belong to the spouse owning the property is stated in 21 Cyc. 1648, and the language is quoted with approval in *Peck* v. *Brummagim,* 31 Cal. 440 [89 Am. Dec. 195]. However, it is significant that in this and every other California case except in *Estate of Barreiro,* 86 Cal. App. 764 [261 Pac. 509], where the principle has been applied, it has been a fact that the property improved by the expenditure of community money was realty belonging to the wife. In each such instance the husband exercising his legal authority has used funds of the community to annex valuable structures to the wife's separate property. In *Shaw* v. *Bernal,* 163 Cal. 262 [124 Pac. 1012], it is stated: " . . . But it is clearly the rule that where a husband deliberately constructs from community funds a building upon the separate property of his wife, in the absence of any sufficient agreement or undertaking to the contrary, as between him and her the title to the building follows the title to the land and is separate property of the wife, and neither he nor the marital partnership has any title to any portion of the property, either land or building." Upon that phase of the decision the court concludes: "In view of what we have said as to the rule applicable where a husband voluntarily constructs with community funds buildings upon the separate property of the wife, there is nothing in the foregoing testimony to compel a conclusion that any part of the property here

involved, land or improvements, was community property at the date of the death of Mrs. Shaw." In *Smith* v. *Smith,* 47 Cal. App. 650 [191 Pac. 60], it is said: "The expenditure by a husband of either his separate funds or the community funds of himself and wife in improving his wife's separate property does not operate to change the title. As between them, in the absence of any specific agreement to the contrary, the title to the improvements followed the land." And from *Carlson* v. *Carlson,* 10 Cal. App. 300 [101 Pac. 923, 925], we quote: "In the absence of any specific agreement, no lien would be created on account of money expended by a husband upon the separate property of the wife. (*Peck* v. *Brummagim,* 31 Cal. 440 [89 Am. Dec. 195].) The law will not infer from such expenditures alone an agreement either to change the character of the property or an intent to charge the same with a lien. It must rather be presumed that it was the intention of the husband to advance the money paid for the benefit of the wife's estate and that it was intended to accrue to her interest. (*Flournoy* v. *Flournoy,* 86 Cal. 294 [21 Am. St. Rep. 39, 24 Pac. 1012].)" It is apparent that the reason back of each of these decisions stressed in the opinion on the subject, except in *Estate of Barreiro, supra,* which will be considered separately is that a husband had authority to control the disposition of the community funds and that he voluntarily annexed them to the separate property of the wife, who exercised no such power. From these facts the intention of the husband is presumed to have been, that the improvements made with the community money should become a part of the separate property of the wife. To merely state a case where the facts are reversed and the husband has spent community funds in improving his own separate estate is to make manifest the palpable impropriety of applying these decided cases as precedents for holding that simply because community property is annexed to the separate property of one of the spouses, the whole is thereby for all purposes the separate property of that spouse. Since the facts are reversed, logic compels the conclusion that the community funds do not merge in the separate property where the husband has, without consent of the wife, improved his own separate property with that belonging to

the community. To hold otherwise would be to permit the authority of the husband in controlling the community property, given him in the interest of greater freedom in its use and for its transfer for the benefit of both himself and his wife, to become a weapon to be used by him to rob her of every vestige of interest in the community property with which the law has expressly invested her. Such a conclusion would violate every sense of justice, and outrage every principle of fair dealing known to the law. The provisions of our code do not require us to so hold, nor do the prior decisions of this jurisdiction compel or warrant a ruling which would thus uphold the marital marauding of the wife's estate. If it be true that, in order for the community property to remain such there must be an agreement to that effect where, under the direction of the husband, it is annexed to the separate property of the wife, then where as in the instant case the husband has used his legal authority in the handling of the community funds to enhance the value of his own separate lands in order that it should become a part thereof and be changed in its character to separate property, an agreement to that effect should be shown. Such consent cannot be presumed from the wife's mere silence, for the law has given her no right to say "no." It would be a novelty to hold that one who has no right to speak is presumed to have waived property rights by silence alone.

There is authority in other jurisdictions upholding the demands of justice in cases of this character and protecting the rights of the wife in community funds. In *Sims* v. *Billington*, 50 La. Ann. 968 [24 South. 637], it was held that although buildings and improvements placed upon separate property of the husband during marriage and paid for with community funds belonged to the husband, the community has an interest therein which will be sustained, and the separate estate will be charged with the amount that such improvements have enhanced the value of the property. In *Legg* v. *Legg*, 34 Wash. 132 [75 Pac. 130], it was said: "In equity and fairness to Malena Legg, as the survivor of the community, she should be reimbursed for betterments placed on the land by the community." A lien was there impressed upon the property for the amount allowed, but only to secure its payment to

the widow after sale, which had been ordered by the trial court. And in *Furrh* v. *Winston,* 66 Tex. 521 [1 S. W. 527], it is said: "It is well settled that the separate estate of one member of the community must reimburse the community for any proper improvements made in good faith upon the separate estate with community funds." Our Supreme Court long since recognized the universal application of these principles, and announced upon the authority of New York, Louisiana and Texas decisions that the beneficent purposes of the statute cannot be frustrated by voluntary transfer by a husband for the purpose of defeating any rights which the wife may have. (*Smith* v. *Smith,* 12 Cal. 216 [73 Am. Dec. 533]; *Estate of Barreiro, supra.*) Text-writers also have perceived that the common law and civil law authorities are in accord while no lien is imposed, yet compensation may be claimed, in the event of improvement of separate property by community investment. (McKay on Community Property, 2d ed., p. 659, sec. 1013; Freeman on Cotenancy and Partition, 2d ed., sec. 138.)

In *Estate of Barreiro, supra,* the opinion asserts: "We therefore have but one question to settle. Were the improvements presumptively community property?" This follows the statement: "We do not mean to say that a fund might not be traced through this medium to its destination, and the character of the property finally acquired be determined according to the facts, because such is not the case before us, but only that in the instant case no character is given to the property by proof other than that the land was separate property." And so, it is evident that this authority makes no pretense of holding that where it is an established fact that valuable improvements paid for with community funds have been placed upon the husband's separate property, the entire estate is to be held as his without compensation or redress of any character to the wife. Later in the same case it is said: "The authorities hold that the most that the marital partnership may acquire under such circumstances, if anything, is a right to reimbursement to the extent of the value added to the property by the improvements."

We conclude that while the Alhambra property must be regarded as being the separate estate of the defendant

Provost, the plaintiff through proper proceedings and pleadings has a right to compensation in the amount of her share in the community, measured by the improvement that such property has effected in his separate property. This situation is not affected by the fact that defendant Provost deeded the entire estate at Alhambra to his daughter, for it was expressly found that this transaction was for the fraudulent purpose of depriving the wife of her right to separate maintenance from her husband, and that the daughter gave nothing of value for the property transferred to her.

Other arguments are advanced and discussed in the briefs which we do not regard necessary to consider in this decision. The judgment is reversed and the cause remanded for a new trial in accordance with the views herein expressed. Of course, the trial court may in the ends of justice even permit an amendment to the pleadings before another trial is had, but the rights of the parties can and should be determined in this action.

Judgment reversed.

Thompson (Ira F.), J., and Burnell, J., *pro tem.*, concurred.